RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0263p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ISLAND CREEK COAL COMPANY,

*Petitioner*,

*v.*

No. 23-3238

ELIZABETH MAYNARD on behalf and widow of Jennings Maynard; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

*Respondents*.

On Petition for Review from the Benefits Review Board.
Nos. 22-0062 BLA; 22-0063 BLA.

Decided and Filed:  December 4, 2023

Before:  MOORE, MURPHY, and MATHIS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Joseph D. Halbert, SHELTON, BRANHAM & HALBERT, PLLC, Lexington, Kentucky, for Petitioner.  Jacob Thomas Moak, MOAK & NUNNERY, P.S.C., Prestonsburg, Kentucky for Respondent Elizabeth Maynard.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Jennings Maynard worked in the coal-mining industry for over forty-three years and developed severe respiratory issues.  Maynard filed a claim for benefits under the Black Lung Benefits Act, but he died while his claim was still pending.  Maynard's widow, Elizabeth Maynard, filed a claim for survivor's benefits, and the

Administrative Law Judge awarded benefits to Elizabeth Maynard, on both Maynard's behalf and as his surviving spouse.  The Benefits Review Board affirmed.  Island Creek Coal Company now petitions this court to review the award.  For the following reasons, we **DENY** the petition for review.

## I.  BACKGROUND

### A.  Statutory and Legal Framework

The Black Lung Benefits Act ("the BLBA"), 30 U.S.C. § 901 *et seq.*, provides benefits "for or on behalf of [coal] miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of [their] death."  20 C.F.R. § 718.204(a). Pneumoconiosis, often called black lung disease, is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  30 U.S.C. § 902(b).  The BLBA provides benefits based on two forms of pneumoconiosis:  (1) clinical pneumoconiosis, and (2) legal pneumoconiosis.  *Brandywine Explosives & Supply v. Dir., Off. of Workers' Comp. Programs*, 790 F.3d 657, 661 (6th Cir. 2015).  "Clinical pneumoconiosis 'consists of those diseases recognized by the medical community as pneumoconioses,' 20 C.F.R. § 718.201(a)(1), whereas legal pneumoconiosis 'includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment,' 20 C.F.R. § 718.201(a)(2)."  *Zurich Am. Ins. Grp. v. Duncan ex rel. Duncan*, 889 F.3d 293, 296–97 (6th Cir. 2018).

To establish entitlement to benefits under the BLBA, a claimant must prove that (1) they are a miner, (2) they have pneumoconiosis, (3) their pneumoconiosis arises out of coal mine employment, and (4) it contributes to (5) their total disability.  *Id.* at 297; 20 C.F.R. § 725.202(d).  If a claimant establishes that they were a "miner engaged in coal-mine employment for fifteen years" in "underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines," 20 C.F.R. § 718.305(b)(1)(i), and that "[t]he miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment," 20 C.F.R. § 718.305(b)(1)(iii), then there is a "rebuttable presumption" that the miner is totally disabled from pneumoconiosis, 20 C.F.R. § 718.305(c).

*See Duncan*, 889 F.3d at 297 n.1 (discussing the history of this presumption). Stated succinctly, if a claimant was (A) a miner for at least fifteen years in qualifying conditions and (B) "is totally disabled due to a respiratory or pulmonary impairment, then the rest of the elements outlined in 20 C.F.R. § 725.202(d) are presumed." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013). Once a claimant establishes the presumption, the burden shifts to the employer to rebut it. *Id.* An employer may rebut that "presumption by establishing that: '(1) the miner has neither clinical nor legal pneumoconiosis, or (2) the miner's respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.'" *Duncan*, 889 F.3d at 297 (quoting *Cent. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 762 F.3d 483, 487 (6th Cir. 2014)).

Because pneumoconiosis is "latent and progressive," miners may file a new claim "even after the entry of a final order denying a previously filed claim." *Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 482 (6th Cir. 2012) (citing 20 C.F.R. § 725.309). Subsequent claims, however, "must be denied unless the miner 'demonstrates that one of the applicable conditions of entitlement . . . has changed since the date upon which the order denying the prior claim became final.'" *Id.* (quoting 20 C.F.R. § 725.309(d)). If a miner establishes a change in condition through new evidence, the ALJ then "must consider all the evidence in the record—old and new—to determine whether the claimant is entitled to benefits." *Id.*

**B. Factual Background**

Jennings Maynard was born September 19, 1927. Pet'r App'x at 29 (Nov. 9, 2020 Proposed Dec. & Order at 2). Maynard, a non-smoker, *id.* at 603 (ALJ Dec. at 3), worked in coal mine employment from 1945 to September 1, 1991, *id.* at 29 (Nov. 9, 2020 Proposed Dec. & Order at 2); the parties stipulated that he worked in coal mine employment for forty-three years, *id.* at 603 (ALJ Dec. at 3). Maynard's last coal mine employment was in Kentucky. *Id.*

Maynard filed a claim for benefits pursuant to the BLBA on November 4, 2019.[1] *Id.* at 652 (BRB Dec. at 2). On November 9, 2020, the District Director awarded benefits on

---

[1]Maynard previously filed a claim for benefits on August 26, 1993. Pet'r App'x at 652 (BRB Dec. at 2 n.1). Because the record for that claim was destroyed, the ALJ "assumed the Miner's prior claim was denied for

Maynard's claim.  *Id.* at 602 (ALJ Dec. at 2).  Island Creek Coal Company contested the Department of Labor's findings and requested a formal hearing before an Administrative Law Judge.  *Id.*  On May 27, 2021, the Office of Administrative Law Judges held a hearing before ALJ John P. Sellers, III, and Maynard testified.  *Id.* at 552, 554 (May 27, 2011 Hr'g Tr.).  On June 24, 2021, prior to receiving a decision from the ALJ, Maynard died.  *Id.* at 602 (ALJ Dec. at 2).  Following Maynard's death, his widow, Elizabeth Maynard,[2] filed a claim for survivor's benefits on July 27, 2021.  *Id.* at 652 (BRB Dec. at 2).

On October 28, 2021, ALJ Sellers issued a decision and order awarding benefits.  *Id.* at 602 (ALJ Dec. at 2).  The ALJ concluded that:  (1) Maynard had over fifteen years of qualifying coal mine employment, *id.* at 613 (ALJ Dec. at 13); (2) Maynard was totally disabled based on his qualifying arterial blood-gas studies and lack of persuasive contrary probative evidence, *id.* at 608, 612 (ALJ Dec. at 8, 12); (3) because Maynard had over fifteen years of qualifying coal mine employment and was totally disabled, he was "entitled to the fifteen-year rebuttable presumption that his disability is due to pneumoconiosis," *id.* at 613 (ALJ Dec. at 13); (4) Island Creek Coal Company did not rebut this presumption, *id.* at 618 (ALJ Dec. at 18); and (5) Elizabeth Maynard was entitled to benefits on behalf of her husband, Jennings Maynard, and automatically to continuing survivor's benefits,[3] *id.* at 619–20 (ALJ Dec. at 19–20).

Island Creek appealed the ALJ's decision to the Benefits Review Board.  *Id.* at 627 (Not. of Appeal).  On appeal to the Board, Island Creek argued that "the ALJ erred in finding [that] Claimant established the Miner had a totally disabling respiratory or pulmonary impairment and invoked the [fifteen-year] presumption," and alternatively, that "the ALJ erred in finding [that Island Creek] failed to rebut the [fifteen-year] presumption."  *Id.* at 653 (BRB Dec. at 3).  The

---

failure to establish any element of entitlement."  *Id.*  *See also id.* at 603–04 (ALJ Dec. at 3–4).  The ALJ held that Maynard's subsequent claim—the claim at bar—could be considered on the merits.  *Id.* at 603–04 (AJ Dec. at 3–4). Island Creek does not contest that holding.

[2]The Miner, Jennings Maynard, is referred to throughout as "the Miner," or "Maynard."  Maynard's widow, Elizabeth Maynard, is referred to throughout as "Elizabeth Maynard" or "Elizabeth."

[3]After determining that Maynard was entitled to benefits, the ALJ concluded that Elizabeth Maynard was automatically entitled to surviving spouse benefits.  Pet'r App'x at 620 (ALJ Dec. at 20); 20 C.F.R. § 725.212. Island Creek does not appeal Elizabeth Maynard's automatic entitlement to survivor's benefits.

Board affirmed the award of benefits.  *Id.* at 660 (BRB Dec. at 10).  This petition for review followed.

## II.  ANALYSIS

### A.  Standard of Review

"In reviewing an appeal from the Board, we review the Board's legal conclusions de novo."  *Ogle*, 737 F.3d at 1068.  Though we will not vacate the Board's decision unless it has committed a legal error or exceeded its scope of review, "our review actually focuses on whether the ALJ's decision is supported by substantial evidence."  *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013).  "[W]e review the ALJ's decision to determine whether the ALJ applied the applicable law correctly to reach a conclusion supported by substantial evidence."  *Ogle*, 737 F.3d at 1068.  An ALJ's decision is supported by substantial evidence if "such relevant evidence as a reasonable mind might accept as adequate" supports the conclusion. *Id.* at 1068–69 (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)).  "If the ALJ has adequately explained why he weighed the evidence as he did, then he has satisfied the substantial evidence standard."  *Id.* at 1069.  "We do not reweigh the evidence or substitute our judgment for that of the ALJ."  *Id.* (quoting *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)).  Accordingly, "[w]e will not reverse the ALJ's decision merely because 'we would have taken a different view of the evidence were we the trier of facts.'" *Ramage*, 737 F.3d at 1056 (quoting *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985)).  A "reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding."  *Id.*  (quoting *McCain v. Dir., Off. of Workers' Comp. Programs*, 58 F. App'x 184, 201 (6th Cir. 2003)).

### B.  Invocation of the Fifteen-Year Presumption

As noted above, a claimant must prove that (1) they are a miner, (2) they have pneumoconiosis, (3) their pneumoconiosis arises out of coal mine employment, and (4) it contributes to (5) their total disability, to establish entitlement to benefits under the BLBA. *Duncan*, 889 F.3d at 297; 20 C.F.R. § 725.202(d).  If a claimant was a miner for at least fifteen

years in qualifying conditions and is totally disabled from a respiratory or pulmonary impairment, then they are entitled to a rebuttable presumption that the remaining factors are satisfied.  20 C.F.R. § 718.305; *see also Ogle*, 737 F.3d at 1069.  On appeal, Island Creek argues that the ALJ erred in finding that Maynard was totally disabled.  Pet'r Br. at 9.  Island Creek does not contest that Maynard was a miner for at least fifteen years in qualifying conditions.  Pet'r App'x at 653 (BRB Dec. at 3 n.5).

Federal regulations provide how a claimant can establish total disability.  *See* 20 C.F.R. § 718.204(b)(2).  "In the absence of contrary probative evidence," a claimant can establish total disability with qualifying pulmonary function tests; qualifying arterial blood-gas tests; evidence that the miner is "suffering from cor pulmonale with right-sided congestive heart failure"; or via "a physician exercising reasoned medical judgment."  *Id.*  If there is contrary probative evidence in the record, the ALJ must consider it.  30 U.S.C. § 923(b) ("In determining the validity of claims under this part, all relevant evidence shall be considered[.]"); *Peabody Coal Co. v. Hill*, 123 F.3d 412, 416 (6th Cir. 1997) ("An administrative law judge must weigh all contrary probative evidence[.]"); *see also Lane v. Union Carbide Corp.*, 105 F.3d 166, 171 (4th Cir. 1997) ("[T]he ALJ must assign the contrary evidence appropriate weight and determine whether it outweighs the evidence that supports a finding of total disability.").

The central dispute in this case centers around Maynard's two qualifying arterial blood-gas tests.  Arterial blood-gas tests, as relevant here, measure an individual's arterial $PO_2$ and arterial $PCO_2$.[4]  *See* 20 C.F.R. pt. 718, App'x C.  The ALJ found that both of Maynard's blood-gas studies were "qualifying based solely on [his] $PCO_2$ values of 50 or above."  Pet'r App'x at 605 (ALJ Dec. at 5).  The ALJ then noted that "the regulations provide that qualifying arterial blood gas studies 'shall establish a miner's total disability' in the absence of contrary probative evidence."  *Id.* (quoting 20 C.F.R. § 718.204(b)(2)).  Maynard's elevated $PCO_2$ thus provided "presumptive evidence of total disability," and raised the question of "whether there is any contrary probative evidence to preclude the use of the arterial blood gas studies from establishing total disability."  *Id.*

---

[4]Arterial $PO_2$ and $PCO_2$ values are used to "detect an impairment in the process of alveolar gas exchange," typically manifested "as a fall in arterial oxygen tension either at rest or during exercise."  20 C.F.R. § 718.105(a).

Island Creek does not dispute that the two arterial blood-gas tests in the record both produced qualifying values under the regulations. Instead, Island Creek merely argues that the ALJ "fail[ed] to give due consideration to the contrary probative evidence which rebutted the PCO2 values." Pet'r Br. at 7. Island Creek continues that, because he failed to consider the contrary probative evidence, the ALJ's decision is not supported by substantial evidence. *Id.*

Island Creek argues that the medical opinions of Drs. Mettu, Selby, and Tuteur are contrary probative evidence that ALJ Sellers erroneously mischaracterized and failed to consider. *See id.* at 9–12. According to Island Creek, "because every physician of record opined that the Miner was not totally disabled, even when considering the elevated PCO2 values," the ALJ "acted improperly" by ignoring this "clearly probative" "collective conclusion." *Id.* at 9–10. We disagree. As an initial matter, Island Creek's repeated statement that "every physician of record opined that the Miner was not totally disabled" is erroneous. *Id.* at 9; *see also id.* at 10, 12–13. Contrary to Island Creek's citation-less assertion, two of the three physicians of record found Maynard to be totally disabled: Dr. Mettu stated that, in his opinion, Maynard "is totally disabled," Pet'r App'x at 215 (Dr. Mettu Rep. at 2); Dr. Tuteur stated that "[b]ased on the totality of all medical data, it is with reasonable medical certainty that Mr. Jennings Maynard, a 92-year-old gentleman, is totally and permanently disabled to such an extent that he is unable to return to work in the coal mine industry or work requiring similar effort," *id.* at 143 (Dr. Tuteur Rep. at 5). Only Dr. Selby found that "Mr. Jennings Maynard is not totally disabled from a pulmonary standpoint." *Id.* at 196 (Dr. Selby Rep. at 9).

Also contrary to Island Creek's argument, ALJ Sellers properly considered each of the medical opinions and permissibly found them not to be probative. The determination of whether a doctor's opinion is "sufficiently documented and reasoned is essentially a credibility matter," and thus "is for the factfinder to decide." *Dir., Off. of Workers' Comp. Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983); *see also Ogle*, 737 F.3d at 1072. As ALJ Sellers himself notes, "[a] 'documented' opinion is one that sets forth the clinical findings, observations, facts, and other data upon which the physician based the diagnosis." Pet'r App'x at 610 (ALJ Dec. at 10 n.8). Likewise, "[a] 'reasoned' opinion is one in which the judge finds the underlying documentation and data adequate to support the physician's conclusions." *Id.* To determine

whether a medical opinion is well-documented and reasoned, an "ALJ must 'examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based.'" *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 635 (6th Cir. 2009) (quoting *Rowe*, 710 F.2d at 255).

Island Creek's arguments ask us to ignore the ALJ's findings and reweigh each piece of evidence ourselves. We will not do so. The ALJ addressed each medical opinion and gave reasoned analysis of why he discredited the opinions on which Island Creek now wishes to rely. Of central importance, "the ALJ has explained his views clearly, thereby allowing us to discern the opinions on which he relies and the reasons for his reliance." *Ogle*, 737 F.3d at 1073. Given that we can follow his reasoning and point to the substantial evidence on which he relied, the ALJ's "determinations to credit or discredit these medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that we must leave to the ALJ." *Id.* In light of these standards, we consider each doctor's opinion in turn.

### 1. Dr. Mettu

Island Creek argues that the ALJ's decision to reject Dr. Mettu's opinion was not supported by substantial evidence. According to Island Creek, "Dr. Mettu was unequivocal that [Maynard] was not disabled from a respiratory standpoint, which is obviously contrary to the elevated PCO2 value, and is probative of [Maynard's] pulmonary capabilities." Pet'r Br. at 11. Island Creek further argues that ALJ Sellers should not have discounted Dr. Mettu's opinion just because he did not acknowledge Maynard's qualifying PCO2 numbers, because "[n]othing in the Act binds Dr. Mettu to accept the elevated PCO2 as evidence of a disability." *Id.*

ALJ Sellers discussed Dr. Mettu's findings and report before stating that he found Dr. Mettu's opinion "neither well-reasoned nor well-documented," and thus did "not find it persuasive contrary evidence" and gave "it little or no weight." Pet'r App'x at 605, 610 (ALJ Dec. at 5, 10). In particular, ALJ Sellers found Dr. Mettu's opinion not well-reasoned because "he did not adequately address the blood gas studies" or even "acknowledge that [Maynard's] elevated PCO2 was sufficiently elevated under the regulatory table to constitute presumptive

evidence of total disability," and not well-documented "because he did not explain why he found [Maynard] totally disabled other than his weakness." *Id.* at 610 (ALJ Dec. at 10).

There is substantial evidence to support the ALJ's finding that Dr. Mettu's opinion was neither well-documented nor well-reasoned. Dr. Mettu opined that Maynard "is totally disabled," but did not state why. *Id.* at 214–15 (Dr. Mettu Rep. at 1–2). A bald conclusion of total disability fails to rely on "studies conducted," "objective indications," *Greene*, 575 F.3d at 635 (quoting *Rowe*, 710 F.2d at 255), or any other "clinical findings, observations, facts [or] other data," Pet'r App'x at 610 (ALJ Dec. at 10 n.8). Moreover, by failing to address the blood-gas studies that established a presumption of total disability, Dr. Mettu failed to demonstrate that the evidence as a whole supported his conclusion. There was, accordingly, substantial evidence to support a finding that Dr. Mettu's conclusion was not well-documented or reasoned.

### 2. Dr. Selby

Island Creek similarly argues that the ALJ's decision to reject Dr. Selby's opinion was not supported by substantial evidence. According to Island Creek, ALJ Sellers mischaracterized Dr. Selby's medical opinion when he suggested that Dr. Selby discounted Maynard's PCO2 levels on account of age and suggested that Dr. Selby relied on generalizations and speculation, instead of evidence of Maynard's particular condition. Pet'r Br. at 11–12. Contrary to ALJ Sellers's characterization, Island Creek argues that "Dr. Selby explained that it is common for people to have an elevated PCO2 but maintain the pulmonary ability to perform manual labor[], which occurred in [Maynard's] case," thus explaining his "vigorous physic[al] condition." *Id.* at 11 (quoting Pet'r App'x at 605–06 (ALJ Dec. at 5–6)). Stated otherwise, Island Creek argues that Dr. Selby permissibly discounted Maynard's PCO2 level because of his physical condition, not merely because of his age. Island Creek, moreover, argues that Dr. Selby's opinions about Maynard's pulmonary capabilities were "based on the totality of the evidence—including . . . [Maynard's] excellent PO2 value," and not based on speculation. *Id.* at 12. Island Creek asserts that ALJ Sellers, accordingly, "cannot simply ignore [Dr. Selby's] opinions and blindly select the qualifying [arterial blood-gas] evidence as a basis for disability." *Id.* Based on this evidence, Island Creek argues that Dr. Selby's medical opinion clearly constitutes contrary probative evidence that the ALJ impermissibly disregarded.

Contrary to Island Creek's argument, ALJ Sellers's conclusions that Dr. Selby (1) impermissibly relied on Maynard's age to discount his arterial blood-gas evidence and (2) relied on generalities rather than evidence specific to Maynard, are based on substantial evidence. ALJ Sellers found Dr. Selby's "opinion to be well-documented," but not "well-reasoned." Pet'r App'x at 611 (ALJ Dec. at 11).

"When a doctor's conclusions are inconsistent with federal regulations, the ALJ can discount those conclusions." *Duncan*, 889 F.3d at 305. When a doctor relies on factors that are "at odds with the Department of Labor's determination," or "inconsistent with the regulations," the doctor relies on "impermissible factor[s]." *Banks*, 690 F.3d at 488. An ALJ may permissibly discount a medical opinion on that basis. *Id.*

Here, Dr. Selby relied first on Maynard's age to find that his arterial blood-gas studies did not indicate a disability. Pet'r App'x at 196 (Dr. Selby Rep. at 9). Contrary to Dr. Selby's reasoning, the Department of Labor has stated that a qualifying $PCO_2$—part of the arterial blood-gas studies—indicates disability *regardless* of age. *Id.* at 606 (ALJ Dec. at 6) (citing Standards for Determining Coal Miners' Total Disability or Death Due to Pneumoconiosis, 45 Fed. Reg. 13,678, 13,712 (Feb. 29, 1980)); *see also* 20 C.F.R. § 718.204(b)(2) (taking age into account for other medical criteria but not for arterial blood-gas tests); 20 C.F.R. pt. 718, App'x C. Dr. Selby's reliance on age to discount Maynard's $PCO_2$ is, accordingly, "at odds with the Department of Labor's determination" and thus "impermissible." *Banks*, 690 F.3d at 488.

Dr. Selby also relied on Maynard's normal $PO_2$ to state that his qualifying $PCO_2$ did not indicate a disability. Pet'r App'x at 480–81 (Dr. Selby Dep. Tr. at 13–14). The Department of Labor, however, has stated that an elevated $PCO_2$ of 50 or higher indicates disability *regardless* of $PO_2$. 20 C.F.R. pt. 718, App'x C; *see also* Pet'r App'x at 611 (ALJ Dec. at 11) ("[A]n elevated $PCO_2$ of 50 or above is presumptive evidence of total disability regardless of the corresponding $PO_2$."). Dr. Selby "did not so much refute the Department's determination in this regard as simply express his disagreement with it." Pet'r App'x at 611 (ALJ Dec. at 11). Dr. Selby's reliance on Maynard's $PO_2$ was, accordingly, "inconsistent with federal regulations[.]" *Duncan*, 889 F.3d at 305. ALJ Sellers thus appropriately discounted Dr. Selby's conclusions. *Id.*

ALJ Sellers also permissibly discounted "Dr. Selby's opinion that it is common for people to perform physical labor with an elevated PCO2" because it was "based on a generality." Pet'r App'x at 607 (ALJ Dec. at 7). Both this court and our sibling circuits "have previously warned mine operators . . . that an appellate court will not disturb an ALJ's reasonable rejection of [a doctor's] statistical methods for failing to apply them to the individual claimant." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 408–09 (6th Cir. 2020) (listing cases); *see also* Pet'r App'x at 607 (ALJ Dec. at 7) ("The Board has repeatedly held that an administrative law judge may discount medical opinions focused on generalities and statistics, rather than on the miner's specific condition."). The ALJ's decision to discredit Dr. Selby's findings was thus supported by substantial evidence.

### 3. Dr. Tuteur

Finally, Island Creek argues that the ALJ's determination that Dr. Tuteur's opinion was not probative is based on a misstatement of the regulation. Pet'r Br. at 12. Island Creek suggests that ALJ Sellers assumed "that a PCO2 of 50 is *definitive* proof of a disability," whereas the regulation states that it is only presumptive proof "when there is no contrary probative evidence." *Id.*

Island Creek points to no evidence that ALJ Sellers erroneously viewed the elevated PCO2 values as "*definitive* proof of a disability." *Id.* ALJ Sellers stated that Maynard's PCO2 value was qualifying and then noted that "the regulations provide that qualifying arterial blood gas studies 'shall establish a miner's total disability' in the absence of contrary probative evidence." Pet'r App'x at 605 (ALJ Dec. at 5) (quoting 20 C.F.R. § 718.204(b)(2)). The ALJ then raised the question of "whether there is any contrary probative evidence to preclude the use of the arterial blood gas studies from establishing total disability." *Id.* From there, ALJ Sellers reasonably weighed the medical opinions and medical tests presented and provided thorough explanations for his determinations. *Id.* at 604–12 (ALJ Dec. at 4–12). Island Creek disregards the ALJ's comprehensive discussion of the possible contrary probative evidence.

As to Dr. Tuteur in particular, ALJ Sellers noted that "he, like Dr. Selby, appears to take issue with the Department's determination that a PCO2 of 50 or above is presumptive evidence

of total disability regardless of the corresponding PO2." *Id.* at 608 (ALJ Dec. at 8). As evidence of that, ALJ Sellers notes that Dr. Tuteur "cited to the Miner's normal PO2, making no mention of his abnormal and qualifying PCO2" when he stated that Maynard "had the ability to exchange gas to achieve efficient oxygen transfer." *Id.* Dr. Tuteur, moreover, "conceded that the arterial blood gas studies were qualifying (based on the elevated PCO2)," but he "nonetheless opined that the studies showed no impairment of oxygen exchange," and "did not explain . . . why the qualifying PCO2 did not show an impairment of gas exchange." *Id.*

As explained above, "[w]hen a doctor's conclusions are inconsistent with federal regulations, the ALJ can discount those conclusions." *Duncan*, 889 F.3d at 305; *see also Banks*, 690 F.3d at 488. Dr. Tuteur "never . . . give[s] any reason to refute the Department's determination that an elevated PCO2 of 50 or above is presumptive evidence of total disability standing alone, regardless of the miner's PO2." Pet'r App'x at 612 (ALJ Dec. at 12). Accordingly, Dr. Tuteur's conclusions are inconsistent with DOL determinations, and he fails to provide any reason for this inconsistency therein. ALJ Sellers thus relied on substantial evidence when he found Dr. Tuteur's opinion not well-reasoned and thus not "compelling contrary probative evidence sufficient to preclude the use of the qualifying blood gas studies to establish total disability." *Id.*

## C. Rebuttal of the Fifteen-Year Presumption

Once a claimant establishes the fifteen-year presumption, the burden shifts to the employer to rebut it. *Duncan*, 889 F.3d at 297. An employer may rebut the "presumption by establishing that: '(1) the miner has neither clinical nor legal pneumoconiosis, or (2) the miner's respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.'" *Id.* (quoting *Cent. Ohio Coal Co.*, 762 F.3d at 487); *see also* 20 C.F.R. § 718.305(d).

The ALJ found that Island Creek failed to rebut the fifteen-year presumption because, though it demonstrated that Maynard did not have clinical pneumoconiosis, it did not demonstrate that Maynard did not have legal pneumoconiosis that contributed to his total disability. Island Creek argues that the ALJ's finding that it failed to establish that Maynard did

not have legal pneumoconiosis is erroneous. Pet'r Br. at 15. Island Creek does not separately appeal the ALJ's finding that Maynard's impairment arose out of, or in connection with, his coal mine employment.

To argue its position that "[t]he ALJ committed reversible error in finding that the Respondent established [that] the Miner had legal pneumoconiosis," Island Creek states that it "reasserts and incorporates its arguments presented to the BRB on this issue as if fully set forth herein." *Id.* at 15–16. This statement is not sufficient to preserve Island Creek's claim of error. *Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 710 (6th Cir. 2006). This court has clearly and repeatedly held that a party shall not incorporate by reference into its appellate briefs any documents or pleadings filed in the courts below. *See, e.g.*, *id.*; *Boler v. Earley*, 865 F.3d 391, 415 n.7 (6th Cir. 2017); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 453 (6th Cir. 2003). This principle applies with equal force to documents or pleadings filed in administrative hearings and district courts. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (listing cases).

This attempt to incorporate by reference an earlier filed argument also fails to comply with the Federal Rules of Appellate Procedure. Fed. R. App. P. 28(a)(8). The Federal Rules of Appellate Procedure and published law of this circuit and others "are sufficiently clear to put [Island Creek] on notice that it could not properly incorporate into its appellate brief the materials filed" with the Board. *Northland Ins. Co.*, 327 F.3d at 453. Island Creek has thus waived its argument on this issue.

Had Island Creek preserved its argument on appeal, we would nonetheless hold that the ALJ's conclusion that Island Creek did not rebut the fifteen-year presumption was supported by substantial evidence. To establish that Maynard does not have legal pneumoconiosis, Island Creek must demonstrate that Maynard does not have any chronic lung disease or impairment that is "significantly related to, or substantially aggravated by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(2), (b); *see also Young*, 947 F.3d at 404–05 (discussing this court's interpretation of "significantly related to" and related regulatory language). Island Creek argued to the Board that "ALJ Sellers improperly characterized the evidence regarding legal pneumoconiosis and made a determination that was not supported by substantial evidence."

Pet'r App'x at 639 (Pet'r BRB Br. at 8). Specifically, Island Creek argued that the ALJ erred by (1) concluding "that Dr. Selby did not provide a reason for ruling out coal dust as a possible cause of the slightly elevated [PCO2] values," *id.* at 640–41 (Pet'r BRB Br. at 9–10), and (2) concluding that Dr. Tuteur failed to provide support for his conclusion that Maynard did not have pneumoconiosis, *id.* at 641–42 (Pet'r BRB Br. at 10–11).

The ALJ relied on substantial evidence to find that "Dr. Selby did not provide any convincing rationale to rebut the presumption that the Miner's elevated PCO2 was not caused at least in part by his coal dust exposure." *Id.* at 617 (ALJ Dec. at 17). After reviewing Dr. Selby's report, the ALJ stated that "Dr. Selby did not address any . . . possible cause of the Miner's elevated PCO2," other than coal dust exposure. *Id.* Though Island Creek objects to this finding, it did not point to a single alternative reason posited by Dr. Selby. *Id.* at 640–41 (Pet'r BRB Br. at 9–10). The ALJ, furthermore, discounted Dr. Selby's opinion about Maynard's chronic bronchitis because Dr. Selby opined that "any chronic bronchitis from occupational exposure occurs at the time of exposure, but then 'almost always' disappears within months after exposure ceases." *Id.* at 617 (ALJ Dec. at 17). "Contrary to Dr. Selby's opinion, however, the regulations describe pneumoconiosis as a latent and progressive disease." *Id.*; *see also* 20 C.F.R. § 718.201(c). Dr. Selby's proposition is inconsistent with the BLBA; the ALJ thus appropriately, and based on substantial evidence, discredited his opinion. *See Sunny Ridge Mining Co. v. Keathley*, 773 F.3d 734, 738 (6th Cir. 2014).

The ALJ's conclusion that "Dr. Tuteur's opinion is insufficient to rebut the presumption of legal pneumoconiosis" was also supported by substantial evidence. Pet'r App'x at 616 (ALJ Dec. at 16). The ALJ noted that "[a]lthough Dr. Tuteur explained that a paralyzed hemidiaphragm is not caused by coal dust exposure, he failed to explain how he was able to rule out coal mine dust exposure as a primary or secondary cause of the Miner's elevated CO2 . . . [and] premised [his opinion] entirely on his view that the Miner's elevated PCO2, which the Department considers presumptive evidence of total disability, caused *no* impairment." *Id.* The ALJ thus properly discredited Dr. Tuteur's opinion for two reasons: (1) because Dr. Tuteur did not explain how he ruled out coal mine dust as significantly related to Maynard's impairment,

and (2) because his opinion was based on a proposition inconsistent with the BLBA.  *See supra* Part II.B.2, 3.  Substantial evidence thus supports the ALJ's conclusion.

### III.  CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.